UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                             Case No. 97-CR-98

RANDALL MILLER,

               Defendant.

## ADDENDUM TO UNITED STATES' RESPONSE IN OPPOSITION TO MOTION FOR COMPASSIONATE RELEASE

### I. Background

On January 14, 2020, Randall Miller filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), alleging that he suffers from various physical ailments that cause him pain and psychological and physical deterioration. He also expressed regret for the criminal conduct that resulted in his incarceration, and described himself as a rehabilitated person. Before filing his motion with the Court, Miller made a compassionate release request to the Warden of his institution, a request that was ultimately denied by the Bureau of Prisons Assistant Director/General Counsel.

On February 5, 2020, at the Court's direction, the government filed a response to Miller's motion, arguing that Miller had not demonstrated that extraordinary and compelling circumstances warrant a compassionate care release, and that in any event, the 18 U.S.C. § 3553 factors, which the Court must consider, weigh against any sentence reduction.

On July 6, 2020, the Court referred the matter to the Federal Defender Services for review, and directed the Federal Defender Services to advise the Court by July 13, 2020, whether

it intended to file anything on Miller's behalf. The Federal Defender Services has not filed on Miller's behalf. On July 15, 2020, Attorney Raymond Dall'Osto, who represented Miller at trial, filed a letter as a "friend of the court," asking the court to give serious consideration and grant compassionate release to Miller on the grounds that he is more at risk than other inmates as the result of the COVID pandemic. Miller has also received letters of support from professionals within the prison system, both of whom speak to his rehabilitation.

Because the COVID pandemic was not yet an issue when the government filed its original response, the United States now submits this addendum response. For the reasons set forth below, the United States maintains that Miller's motion for compassionate release should be denied.

### A. COVID-19 at MCFP Springfield

Randall Miler is presently incarcerated at MCFP Springfield in Springfield, Missouri. As of this writing, MCFP Springfield has one reported case of COVID-19 among inmates, but this inmate has since recovered. Therefore, there are no active cases of COVID-19 at MCFP Springfield. *See* https://www.bop.gov/coronavirus/index.jsp.

### B. BOP's Response to the COVID-19 Pandemic

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

a.   *Pandemic Influenza Plan*

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

Beginning April 1, 2020, BOP implemented Phase Five of the Action Plan, which currently governs operations. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers,

telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

  b. *Other Precautions*

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, such as Philadelphia, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended until further notice, to limit the number of people entering the facility and interacting with inmates. In order

to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

## II. ARGUMENT

### A. The General Threat Posed By COVID-19 Is Not An Extraordinary And Compelling Reason Warranting A Sentence Reduction

As the government's original response details, the defendant has failed to establish that his medical issues and circumstances constitute an extraordinary and compelling reason to grant him compassionate release. The threat of COVID-19 does not alter this conclusion.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself provide a basis for a sentence reduction. The categories in the relevant policy statement encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), *as revised* (Apr. 8, 2020); *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[1] To

---

[1] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y.

classify COVID-19 itself as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[2] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I).

In this case, Miller purports to suffer from several medical conditions including rheumatoid arthritis, gastroesophageal reflux disease, depression, and cataracts. While these

---

Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

[2] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified June 25, 2020).

conditions are serious, they have not been identified by the CDC as chronic conditions which elevate a person's risk of becoming seriously ill from COVID-19. He thus fails to establish a medical condition that—in the context of the coronavirus emergency or otherwise—qualifies as an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A).

### B. Rehabilitation Does Not Constitute An Extraordinary And Compelling Reason Warranting Release

The defendant's claimed rehabilitation also does not constitute an extraordinary and compelling reason warranting his release.

Miller argues that he has been rehabilitated. He further offers two letters from employees at MCFP Springfield which speak to his character and rehabilitation. Ultimately, Miller's claimed rehabilitation is insufficient to warrant compassionate release. As provided in 28 U.S.C. 944(t), "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." As detailed above, the defendant has failed to demonstrate that his medical conditions put him at an increased risk of becoming seriously ill from COVID-19. Thus, the defendant may only rely on his purported rehabilitation as justification for his release. However, as detailed in 28 U.S.C. 944(t) this alone shall not be considered an extraordinary and compelling reason. The defendant has failed to demonstrate any extraordinary and compelling reason justifying his compassionate release. Therefore, the defendant's motion must be denied.

Dated at Milwaukee, Wisconsin on July 16, 2020.

          Respectfully submitted,

          MATTHEW D. KRUEGER
          United States Attorney

BY:   s/Carol L. Kraft
       CAROL L. KRAFT, WSB 1000117
       Assistant United States Attorney
       RACHEL ROBERGE

Law Intern
517 East Wisconsin Avenue, # 530
Milwaukee, WI 53202
Telephone: 414 297-1706
Fax: 414 297-1738
Email: carol.kraft@usdoj.gov