UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

     v.                                                Case No. 97-CR-98

RANDALL MILLER,

        Defendant.

**UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL FILING IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE PURUSANT TO 18 U.S.C. § 3582 (c) (1) (A)**

      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Carol L. Kraft, Assistant United States Attorney, hereby responds to the defendant's supplemental filing in support of his motion for compassionate relief filed pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the United States maintains that the motion should be denied.

### INTRODUCTION

      Randall Miller is currently serving to two concurrent life sentences and two concurrent 240 month sentences for a total sentence of life in prison following his conviction on RICO and drug trafficking charges. CR. 1533, 1689.[1] The convictions were the result of criminal activity that occurred during and as part of a violent Outlaw motorcycle gang war waged over territory. *See,* Miller revised Presentence Report (PSR) 10/26/2000. In convicting Miller, a jury found

---

[1] In this response, CR. followed by a number refers to a docket entry on the district court record in Case No. 97-CR-98.

1

him responsible for twelve racketeering acts, including the murders of Donald Wagner, Morris and Ruth Gauger, and Michael Quale (Racketeering Acts 2, 4, and 13); attempted murder/conspiracy to commit murder of rival bikers, specifically members of the Hell's Angels, Hell's Henchmen, and their affiliate clubs (Racketeering Acts 1, 6, 7, and 9); robbery and assault of rival biker club members and associates (Racketeering Acts 5 and 8); cocaine and Hydrocodone trafficking (Racketeering Acts 23 and 24); and passing counterfeit United States currency (Racketeering Act 25).

Miller is currently incarcerated at MCFP Springfield, a United States Medical Facility for Federal Prisoners, located in Springfield, Missouri. He has been in custody since June 10, 1997.[2] Accordingly, he has served approximately 23 years and 3 months of his total life sentence. On July 25, 2019, Miller submitted a request for compassionate release to the Warden at Springfield, based on a "debilitating medical condition," specifically identifying rheumatoid arthritis as that condition. See Gov. Ex. 1. On October 7, 2019, the Assistant Director/General Counsel denied Miller's request for a reduction of sentence (RIS) stating that the decision was made after "carefully reviewing the documentation accompanying the request and consulting with the BOP's Medical Director. Gov. Ex. 2. On January 14, 2020, Miller filed a *pro se* motion for compassionate release with Court pursuant to 18 U.S.C. § 3285 (c) (1) (A). He characterized his motion as an appeal of the BOP ruling. CR. 2205. As grounds for release, Miller referenced his rheumatoid arthritis, pain associated with amputation, gastro-esophageal disease, and cataracts and characterized them as incurable debilitating conditions. The Court directed the United States to respond to the motion, and on February 5, 2020, the United States filed a response, arguing that Miller's motion should be denied. CR. 2207. On July 6, 2020, the Court

---

[2] Miller was arrested on June 10, 1997 and ordered detained on June 13, 1997. CR. 25, 69.

referred the defendant's motion to the federal defender's office for consideration of whether that office would file a pleading in support of Miller's motion. CR. 2020. The federal defender's office did not file a response. On July 15, 2020, a private attorney, who had represented Miller at trial, filed a letter as a friend of the court. He urged the Court to grant Miller's motion in light of the COVID-19 pandemic and the related health risks endemic to the prison setting. CR. 2012. On July 16, 2020, the government responded with a supplemental filing, describing the measures that BOP has taken to protect its prison population from the COVID-19 virus, and reiterating the government's position that in this case, the 18 U.S.C.§ 3553 factors weigh against Miller's early release. CR. 2213. On the same day, the federal defender responded that its office would, in fact, support Miller's compassionate release motion. Cr. 2215. On September 25, 2020, after several extensions, Miller's supplement to his compassionate release motion was filed with the Court. Cr. 2231. Miller asks the Court to modify his sentence to time served, to be followed by a ten-year term of supervised release, with the condition of 3 years home confinement at the home of his niece in New Jersey. In support of this request he now contends that he is at high risk of COVID-19 infection because he suffers from additional afflictions including immunosuppression with two drugs, cardiac disease, including heart failure and valvular disease, and lung disease requiring nocturnal supplemental oxygen.[3] For the reasons discussed below, the motion should be denied.

## LEGAL FRAMEWORK

As this Court is well aware, under 18 U.S.C. § 3582 (c) (1) (A), as amended on December 21, 2018 by the First Step Act of 2018, Pub. L. No. 115-391, § 603 (b), 132 Stat. 5194, 5239, a court may grant a defendant's own motion for a reduction in his sentence, filed "after the defendant

---

[3] See Def. Ex. B., 9/21/2020 Letter of Barbara Benjamin, M.D.

3

Case 2:97-cr-00098-JPS   Filed 10/08/20   Page 3 of 11   Document 2233

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553 (a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582 (c) (1) (A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

**ARGUMENT**

**I.    Miller's expanded motion should be denied for failure to meet the exhaustion requirement**

The Court should find that it cannot address Miller's motion as it is now presented. Miller's July 25, 2019 compassionate release request to the Warden was based on debilitating health issues, specifically pain from his above the knee right leg amputation and his rheumatoid arthritis. See Gov. Ex. 1. In its response denying his request for compassionate release, the BOP addressed those conditions as well as Miller's history of gastro-esophageal reflux disease. The BOP denial opined that with optimized treatment of his RA and pain, Miller could participate in the required physical therapy and move toward being more independent.[4] See Gov. Ex. 2. Miller's request to the Warden did not claim, as his supplemental motion does now, that immunosuppression with two drugs, cardiac disease, including heart failure and valvular disease,

---

[4] Additionally, the BOP has addressed Miller's "blindness" complaint, raised in his original motion to the court. On February 20, 2020 he underwent cataract surgery. See, Def. Ex. A, pp. 443-450.

4

and lung disease requiring nocturnal supplemental oxygen[5] are underlying medical conditions that coupled with the COVID-19 pandemic and his rehabilitation constitute extraordinary and compelling reasons for his compassionate release. In other words, these are new claims. Because Miller never presented his current request to the Warden, the BOP has been unable to undertake an assessment regarding the merit of the claims. As described in the government's original response, BOP has an extensive protocol for evaluating an inmate's compassionate release request. Moreover, because he has not exhausted these administrative remedies as required by the statute, Miller has not met the exhaustion requirement[6] that triggers the Court's authority to act under 18 U.S.C. § 3582(c) (1) (A). Although the time limitation in § 3582(c) (1) (A) is not jurisdictional, *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015), it is a mandatory claim-processing rule, and must be enforced if a party "properly raise[s]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and, respectfully, it must be enforced. *Taylor*, 778 F.3d at 670; *see also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition.").

    Accordingly, the Court should deny Miller's compassionate release motion as originally filed, and the Court should deny without prejudice, the supplemental motion insofar as it is based on new health claims that were not previously made in his request to the Warden. The Court is

---

[5] See Def. Ex. B., 9/21/2020 Letter of Barbara Benjamin, M.D.
[6] In this memorandum response, the term "exhaustion requirement" should be read to include both the statutory requirement that an inmate make a request to the warden of his/her institution and wait 30 days for the warden to act before filing a motion with the court, and the requirement that the inmate exhaust his administrative remedies if the warden refuses to act on the request.

5

barred from considering Miller's expanded motion because he has not met the statutory exhaustion requirements.

## II. Miller's motion should fail on the merits.

### A. Miller's environment adequately protects him from the risks of COVID-19.

If the Court determines that Miller's supplemented filing does not create a new motion that suffers from a fatal exhaustion flaw, the Court should nonetheless deny the motion on the merits.

Miller contends that he now suffers from three health conditions that are recognized as COVID risk factors, including 1) immunosuppression with two drugs, 2) cardiac disease, including heart failure and valvular disease, and 3) lung disease requiring nocturnal supplemental oxygen. In support of this contention, he provides an opinion from Dr. Barbara Benjamin, a Minnesota based Family Practice Physician, who is not a treating physician, but rather was retained to render an opinion based on a review of Miller's medical records. [7] In addition to Dr. Benjamin's letter, Miller includes 1315 pages of medical records from MCFP Springfield. Notably absent from Miller's filing is any opinion or recommendation from his actual primary care physician at MCFP Springfield where he is currently incarcerated, or from medical consultants and specialists who diagnosed these conditions and are involved in his care.

The records that Miller has filed are not indexed and are difficult to navigate. They include 664 pages entitled Clinical Encounter-Administrative Notes ("NOTES"). The NOTES cover the past year of Miller's care at MCFP Springfield, starting on 9/4/2020 and continuing in descending chronological order back to 9/9/2019. These records are a combination of regular pharmacy chart

---

[7] Dr. Benjamin appears to be a go-to physician for defendants seeking compassionate release support. *See United States v. Ramsey*, 2020 WL 3798938 at *4, Jul. 7, 2020 (Dr. Benjamin opining on the medical risks to a prisoner confined at FCI Florence, in Colorado); *United States v. Witter*, 2020 WL 1974200 at*1, Apr. 24, 2020 (Dr. Benjamin letter opining prisoner at FMC Carswell in Ft. Worth Texas is highly susceptible to death if infected by COVID-19).

6

reviews, clinical encounters with Miller, and consultation notes. Def. Ex. A, pp. 1-664. The NOTES provide a timeline of Miller's medical history over the past year, and reflect that the period between late January 2020 and mid-March 2020 marked the initial diagnosis of the medical conditions that Miller now urges the court to consider as the basis for his compassionate release motion.

In addition to the NOTES, the medical records include approximately 230 pages of test results and consult reports related to Miller's March 2020 hospital admissions following complaints of shortness of breath, together with June and July 2020 follow-up reports from pulmonary, cardiac and rheumatology consultants. Def. Ex. A, pp. 1036-1266. The remaining pages, approximately 419 in number, consist of items that document the medical care Miller is now receiving and has received at MCFP Springfield over the course of the past year.[8] Def, Ex. A, pp. 666-1035.

The overarching takeaway from these records is that Miller's medical issues are very well managed at MCFP Springfield. They confirm that Miller now has several serious chronic conditions, but also establish that these are entirely new and different from those health issues which he promoted as the basis for compassionate release in his request to the Warden in July 2019 and to this Court in his January 2020 appeal of the BOP's decision.

According to Miller's medical records, he first complained of "feeling kinda funny," with a "fluttering," in his chest on January 17, 2020. Def. Ex. A, p. 506-08. This complaint was

---

[8] For example, there are 35 pages documenting Miller's vital signs including temperature, heart rate, blood pressure, blood oxygen level, and weight. Def. Ex. A, pp. 665-699; a report reflecting negative TB tests 2008-2019. Def. Ex. A, pp.700-701; 128 pages of records documenting the day and exact time each prescribed medication was administered him at MCFP Springfield. Def. Ex. A pp. 702-829; a pain management record. Def. Ex. A, pp. 835-837; medication allergy record. Def. Ex. A, p. 840; a vision screen record. Def. Ex. A, pp. 918-921; immunization record. Def. Ex. A, p. 922; multiple monthly nursing care assessments together with periodic nursing care center disciplinary conference notes. Def. Ex. A, pp. 1034-35, 1053-54, 1067-72, 1074-78, 1148-49, 1151-54, 1209-11, 1226-28, 1267-73, 1275-77, 1286-1288, 1298-1300, 1301-04.

7

followed by multiple evaluations on the unit at MCFP Springfield and at the local hospital. Concurrent with an initial diagnosis of atrial fibrillation, he was started on a new medication. Def. Ex. A, pp. 497-499, 491. On January 26, 2020, when Miller again complained of "not feeling right," he received an EKG, and was sent back to the hospital for further evaluation. His initial atrial fibrillation diagnosis was confirmed and he was returned to the unit at MCFP Springfield, feeling better. Def. Ex. A, pp. 472-84. On February 6, 2020, Miller was seen for a consultation at the hospital cardiology department. Def. Ex. A, p. 457, 451. On March 5, 2020, he complained of tightness to his chest, pain with deep breathing, and nausea, and then on March 6, 2020, of epigastric pain in addition to shortness of breath. He received oxygen, which improved both his blood oxygen saturation level and his breathing. Def. Ex. A, p. 410-17. On March 13, 2020, Miller was admitted to the hospital with an admitting diagnosis of pericardial/pleural effusion. The admitting assessment indicated the principal problem as acute chronic diastolic (congestive) heart failure, with active problems to include rheumatoid arthritis involving multiple sites with positive rheumatoid factor; permanent atrial fibrillation; chronic diastolic heart failure; pleural effusion, left; history of right below knee amputation; pericardial effusion and immunosuppression due to drug therapy. Def. Ex. A, pp. 366-68. On March 19, 2020, after he again complained of shortness of breath. Miller was readmitted. Def. Ex. A. p. He remained hospitalized until March 24, 2020. Def. Ex. A, pp. 338-39, 312-48. Although Miller refused to accept the medical staff recommendation for a heart healthy diet as a treatment for his atrial fibrillation, cardiomyopathy,[9] with his medication adjusted, the records reflect steady improvement. A radiological follow-up report in mid-June 2020, noted, "No pleural or pericardial effusion. Low grade pleural parenchymal scarring." Def. Ex. A., 1064. In June and July, Miller continued to report some

---

[9] See Medical Treatment Refusal, signed by Miller on 3/25/2020, Def. Ex. A, p. 1084. Also see NOTES, Def. Ex. A, p. 144.

shortness of breath, but throughout the successive months, he has repeatedly reported "feeling good," or having "no complaints." Def. Ex. A, pp. 195, 191 147. His major complaint going forward seemed to be a rash on his buttocks, and ongoing pain related to his rheumatoid arthritis and amputation. Interestingly, in September 2020, his primary care doctor noted that while Miller generally rates his pain at 7-8/10, "he always looks comfortable." Def. Ex. A, p. 3.

To be sure, Miller's conditions, i.e. immunosuppression, cardiac disease, and pulmonary disease, fall within the categories of health issues that the Center for Disease Control ("CDC") identifies as issues that raise the risk of serious illness from COVID-19. That, however, should not be the final determining factor as to whether Miller should be granted compassionate release. He is currently placed at MCFP Springfield, a federal medical facility where he is getting excellent care. The records that Miller filed in support of this motion show that his medical conditions, treatments, and medications are closely monitored. He does not live in a dormitory with multiple other inmates, but rather is assigned to a single-man cell.[10] It is hard to imagine a living situation that is safer, or better suited to his needs. Moreover, unlike some of the federal prisons where BOP has had a hard time controlling coronavirus positive cases, MCFP Springfield has done an excellent job of protecting its inmate population. At the time of this writing, BOP's COVID-19 coronavirus website (updated daily at 3:00 p.m.) at https://www.bop.gov/coronavirus (last visited 10/8/2020), reported that MCFP Springfield had 3 current positive coronavirus inmate cases in a population of 863 inmates. In addition, during the more than seven months since this pandemic started, MCFP Springfield reported only 6 additional positive inmates, all recovered.

---

[10] See Gov. Ex. 3, BOP email from Amy Sandefer-Malott.

9

Case 2:97-cr-00098-JPS   Filed 10/08/20   Page 9 of 11   Document 2233

### B. The Section 3553 Sentencing Factors Weigh Against Miller's Release.

Even assuming that Miller's age and health issues could support compassionate release, the § 3553 sentencing factors clearly weight against it. The enormity of Miller's crimes is laid out in the government's original filing. He is personally responsible for the brutal murders of Morris Gauger and Donald Wagner. He was a coconspirator in conduct that led to the death of Ruth Gauger and of Michael Quale during an attack launched on rival bikers in Lancaster New York. As part of a gang war, he planted explosives on vehicles belonging to Hell's Angel Pat Matter and Hell's Henchman Eddie Murphy, and at the door of a Hell's Henchmen clubhouse. He beat and stripped the colors from a Hell's Angel who had the temerity to stop at bar on his way through town. He tried to kidnap rival biker Murphy after the explosive on his truck failed to kill him. He pistol whipped and broke the nose of a female bartender while his companions shot up the bar as a message that rival bikers were not to be served in Outlaw territory. He went on hunting trips with fellow Outlaws, armed and ready to shoot them off their bikes. And then there were the drug trafficking and counterfeiting offenses. Miller was among the most violent of the Outlaw members who engaged in an extensive a gang war that was fueled by jealous rivalry and executed with firearms and explosives.

In his motion, Miller does not dispute these crimes, nor does he argue that the sentences he received are not just, fair or deserved. Rather, he argues that he is a changed man, a man filled with regret and remorse who has turned his life around based on a belief in God and a desire to help others.[11] That change of heart and mind is laudable, but it cannot erase the enormity of his

---

[11] Miller also argues that he should be released because others who are similarly situated to him have been released or received shorter sentences. But his examples are false equivalents. Motions brought for two of these men were based on cooperation with the prosecution of others, a circumstance that requires the court to make an entirely different analysis than the one required here. And if a third received a shorter sentence, that decision too, was based on different factors than are present in the instant case.

10

crimes or the depth of the harm that he has caused to others. Miller may no longer be a danger to people in the community, but he remains deserving of the sentences imposed for his crimes. To release him now would surely depreciate the seriousness of those crimes and deprive his victims of the justice to which they are entitled. The Court should deny his motion for compassionate release.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motion for compassionate release.

Dated at Milwaukee, Wisconsin, October 8, 2020.

    Respectfully submitted,

    MATTHEW D. KRUEGER
    United States Attorney

By:

    *s/Carol L. Kraft*
    CAROL L. KRAFT, WSB# 1000117
    United States Attorney
    517 East Wisconsin Avenue, # 530
    Milwaukee, WI 53202
    Telephone: 414 297-1706
    Fax: 414 297-1738
    Cell: 414 239-0147
    Email: carol.kraft@usdoj.gov