UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff*,

  *vs.*              Case No. 97-CR-98 (JPS)

RANDALL MILLER,

   *Defendant*.

## MILLER'S REPLY: SUPPLEMENT TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

  The government advances two primary arguments in opposition to Miller's motion. First, even though it has already conceded that Miller exhausted his administrative remedies, the government now takes the position that Miller must re-exhaust them, because his original request for compassionate release didn't address the COVID-19 pandemic. This is not so. Courts around the country have resoundingly rejected this argument, and the government's own filings in this case belie the claim. Second, it argues that the seriousness of the offense weighs against release. Miller's crimes were indeed very serious. But the Court must examine all of the sentencing factors, including Miller's personal history and characteristics, his rehabilitation, the need to protect the public, and his medical conditions. Those factors, taken as a whole, support Miller's request for release.

*Federal Defender Services*
*of Wisconsin, Inc.*

### I. Miller need not re-exhaust administrative remedies.

The government argues that Miller has failed to exhaust his administrative remedies because his supplement raises new claims not made in his July 25, 2019, request to the warden of his prison. R. 2233 at 4-5. The government previously conceded that Miller had exhausted his administrative remedies. R. 2207 at 9. Its position now is that Miller needs to re-exhaust them, and raise every issue with BOP that he ultimately brings before the Court. Courts generally refer to this as issue exhaustion. *See United States v. Torres*, No. 87-CR-593 (SHS), 2020 WL 2815003, at *3 (S.D.N.Y. June 1, 2020) ("The government appears to be raising what is sometimes called "issue exhaustion." In the government's view, before a district court may consider a compassionate-release motion, a defendant must have exhausted every *issue*—including the COVID-19 pandemic—raised in the motion." (internal citations omitted) (emphasis in original)).

The government offers no legal support for the claim that Miller must exhaust every issue before bringing a motion before this Court. In fact, nearly every court to consider this argument has rejected it. *See United States v. Poole*, No. 2:02-CR-20026, 2020 WL 4192280, at *4 (W.D. Tenn. July 14, 2020) ("The statute contains no language requiring that a court consider only arguments raised first to the BOP or requiring a defendant to raise each ground for relief to the BOP."); *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *4 (S.D. Iowa Apr. 29, 2020) ("[I]ssue exhaustion

2

*Federal Defender Services
of Wisconsin, Inc.*
Case 2:97-cr-00098-JPS   Filed 10/16/20   Page 2 of 12   Document 2235

is inappropriate because § 3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings."); *United States v. Dillard*, No. 1:15-CR-00170-SAB, 2020 WL 2564638, at *2 (D. Idaho Apr. 27, 2020) ("The statute gives the Court the opportunity to be involved 30 days after such a request is made. The statute does not require issue exhaustion as argued by the United States"); *United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *2 (E.D. Mich. July 17, 2020) ("federal courts confronted with the argument now raised by the government generally have been skeptical of the notion that the statute imposes any requirement of "issue exhaustion" on requests for compassionate release, or that a prisoner explicitly must mention the pandemic as a basis of his administrative request, or else submit and exhaust a fresh request on that ground — and wait yet another 30 days — before seeking judicial review."); *United States v. Welch*, 0:09-cr-60212-KAM, ECF 101 at 3-4 (S.D. Fl. May 21, 2020) ("for purposes of the First Step Act, the Court finds that Defendant has satisfied the exhaustion requirement. There is no dispute that Defendant sought release through the Bureau of Prisons based on the original grounds he asserted, namely, an act of heroism, completion of over 10 years of his 15 year sentence and rehabilitation. The Court concludes that Defendant need not go through another round of exhaustion with respect to his new ground relating to COVID-19 and his medical conditions."); *United States v. Smith*, No. CR07-3038-LTS, 2020 WL 2844222, at *7 (N.D. Iowa June 1, 2020) ("Circumstances have changed since

3

Smith initially filed his administrative request. The basis for Smith's request has not. I will not require Smith to submit another administrative request, a process that has already proven unavailing, simply because Smith's situation is now more concerning in light of COVID-19."); *United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *5 (D. Kan. Aug. 10, 2020) ("In the context of compassionate release motions, the nature of the underlying administrative proceeding counsels against requiring issue exhaustion."); *United States v. Resnick*, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020) (calling the same argument the government makes here, "sheer sophistry."); *but see United States v. Butcher*, No. 5:12CR24, 2020 WL 2610738, at *1 n. 1 (N.D. Ohio May 22, 2020) (denying compassionate release motion for failure to satisfy issue exhaustion). This Court should reject it too, for the same reasons these many courts have.

But the government's argument should fail for another reason. Before Miller supplemented his motion, the government supplemented its original response, solely to address the COVID-19 pandemic and how it related to the merits of Miller's motion. R. 2213. Implicit in that filing is the government's recognition that COVID-19 was relevant to the Court's analysis of a compassionate release motion. *Id*. at 6. The government's argument in that filing wasn't that the Court couldn't consider COVID-19 because Miller didn't address it in his original compassionate release request. Indeed, the government conceded that if Miller suffered from a medical condition

4

*Federal Defender Services of Wisconsin, Inc.*

that the CDC recognized as elevating the risk of serious illness from COVID-19, "that condition may satisfy the standard of 'extraordinary and compelling reasons.'" *Id.* at 6. It simply argued that Miller had "failed to demonstrate that his medical conditions put him at an increased risk of becoming seriously ill from COVID-19." *Id.* at 7. So the government's argument that Miller must re-exhaust his administrative remedies isn't just inconsistent with the law on this topic, it's inconsistent with the government's own filing in this case. The COVID-19 pandemic does impact Miller's motion, and it was appropriate for the government to address it in its supplement. If the government believed Miller needed to re-exhaust his administrative remedies, it wouldn't have waited until now to raise the argument.

For those reasons, the Court can address the merits of Miller's motion, and can do so now. If the Court disagrees, Miller asks in the alternative, that the Court take the motion under advisement for a few more weeks. Out of an abundance of caution, after receiving the government's response, Miller submitted a second administrative request for compassionate release. To be clear, the defense did not believe that doing so was necessary, but did so out of an abundance of caution. That request, which addresses the risks posed by the COVID-19 pandemic, was submitted to the warden on Tuesday October 13, 2020. So if the Court accepts the government's argument that Miller must exhaust every argument, the claims raised in Miller's motion will be ripe for this Court's review by November 13, 2020 at the latest.

5

## II. The COVID-19 pandemic coupled with Miller's risk factors amount to extraordinary and compelling reasons to reduce his sentence.

As to the merits of Miller's motion, the government argues that it should be denied for two reasons. First, it argues that even if Miller has CDC-recognized risk factors, he is getting good medical care in prison. Second, it argues that Miller's crimes are too serious to justify his release.

The government does not seriously dispute that extraordinary and compelling reasons exist. It complains that Miller's medical records aren't indexed, that Dr. Benjamin has opined on other cases handled by Miller's attorney's office,[1] and that Miller has not included any opinions or recommendations from Miller's actual treating physicians.[2] But none of those complaints undercut Miller's clear health complications and risk factors. As to those, the government concedes that they fall within the conditions the CDC recognizes as increasing the risk of severe illness or death from COVID-19. *Id*. at 9.

The Department of Justice has repeatedly taken the position that the combination of the COVID-19 pandemic and the existence of a CDC-recognized risk

---

[1] The fact that Dr. Benjamin has submitted an opinion in other cases doesn't undermine her opinions here. Indeed, the government doesn't dispute Dr. Benjamin's opinions. Federal Defender Services of Wisconsin has relied on Dr. Benjamin because she has the medical expertise and ability to interpret medical records (here over a 1,000 pages of them). Her opinions are not controversial or contested. Under the government's view, FDSW should find a different doctor for every case, which would be impractical, unnecessary, and expensive.

[2] Anecdotally, counsel for Miller has reviewed hundreds of COVID-19 cases in this and other districts, including motions, briefs, and orders, and can't recall a single case where the treating physician or primary care physician (who are largely BOP employees) opined on the risks of COVID-19 to the inmate in the BOP records.

6

*Federal Defender Services of Wisconsin, Inc.*

factor amount to extraordinary and compelling reasons. *See, e.g.*, *United States v. Garcia*, Case No. 20–1716 (7th Cir.), Doc. 9 at 7-8 ("The government concedes, however, that Garcia has presented an 'extraordinary and compelling' reason for release" because "Garcia is diabetic, and the Centers for Disease Control and Prevention lists diabetes as a risk factor for contracting a more severe form of COVID-19."); *United States v. Hernandez*, Case No. 04-cr-171, Doc. 109 at 1-2 (E.D. Wis.) (same). It's unclear from the government's response if it is rejecting that position in this case. Following its acknowledgment that Miller's conditions fall within the CDC's recognized COVID-19 risk factors, the government argues that "should not be the final determining factor as to whether Miller is granted compassionate release." *Id*. at 9. While Miller agrees that his health conditions combined with the COVID-19 pandemic are not the final determining factor in whether he should be granted compassionate release, they are the determining factor as to whether extraordinary and compelling reasons exist to reduce the sentence. If there are extraordinary and compelling reasons to reduce the sentence, then the final determining factor is whether the § 3553(a) factors nevertheless counsel against release.

Nonetheless, the government argues that notwithstanding Miller's risk factors, the BOP is providing Miller with "excellent" medical care and doing an "excellent job of protecting its inmate population" at MFPC Springfield. These arguments miss the point. Miller isn't arguing that he's receiving inadequate medical care. Rather, "he

7

*Federal Defender Services of Wisconsin, Inc.*

contends that he is at a heightened risk of catching COVID-19 in prison, and that he has a heightened risk of dying if he does." *United States v. Ramsey*, No. 18-CR-163, 2020 WL 3798938, at *5 (E.D. Wis. July 7, 2020); *see also United States v. Clark*, No. 4:08-CR-00096, 2020 WL 3395540, at *4 (S.D. Iowa June 17, 2020) (finding that this argument by the government "misses the point"). This argument also fails to account for the lack of testing being conducted at MFPC Springfield. As of October 13, 2020, the prison had conducted just 95 COVID-19 tests. And it had three current positive cases. In the last two days, the prison has conducted 39 more tests. At least 33 of those tested were positive, as the prison currently has 36 positive cases. This ominous sign underscores the primary problem with the government's argument: it fails to account for the difficulty in controlling the virus in prison settings. *See United States v. Cunningham*, No. 15-CR-83-1-JPS, 2020 WL 4346811, at *1 (E.D. Wis. July 29, 2020) (recognizing the difficulty of social distancing and frequent sanitizing amongst other "unique challenges" prisons face in controlling the spread of the virus). Despite BOP's efforts, it's shown itself unable to prevent widespread outbreaks within its prisons.

The bottom line is that Miller's heart problems, immunosuppression, and lung disease are all factors that increase Miller's risk of death or severe illness from COVID-19. Given the state of the virus, the difficulty in protecting Miller from the virus in prison, and the risks to Miller should he contract COVID-19, Miller has shown extraordinary and compelling reasons exist to reduce his sentence.

8

## III. The § 3553 factors, taken as a whole, don't weigh against release

These procedural claims cloud the real issue in this case: whether despite the clear extraordinary and compelling reasons to grant compassionate release, the § 3553(a) factors nevertheless weigh against releasing Miller. Miller's supplement recognized the weighty considerations at play in this case, and spent a significant amount of time addressing how they all interplay with Miller's motion and society's sense of justice and compassion. R. 2232 at 12. But the government's response is largely silent on these issues, instead only briefly addressing the seriousness of Miller's offenses, something Miller hasn't disputed.

The government does not dispute that Miller is not a danger to the community. R. 2233 at 11. It doesn't dispute the extent of his rehabilitation or sincerity of his remorse. *Id*. at 10. Nor does it dispute that similarly situated individuals have recently received lighter sentences or had their life sentences reduced. *Id.* at 10 n. 11. It does not dispute that the costs of imprisoning Miller are staggering or suggest that there is any utilitarian benefit to his continued incarceration that justify those costs. The government only argues that reducing Miller's sentence would depreciate the seriousness of his crimes.

This argument ignores the remaining sentencing considerations. It's also undermined by the government's agreement to impose lesser sentences or reduce sentences for people who have committed the same crimes Miller committed. The

9

*Federal Defender Services of Wisconsin, Inc.*

government's response claims that the cases of Warneke and Schneider are "false equivalents" because those sentences were reduced for cooperation, which requires a different analysis than is required here. R. 2233 at 10 n. 11. But that's not true. In evaluating a motion under Fed R. Crim. Pro. 35(b), courts do consider the 3553(a) factors. *See United States v. Chapman*, 532 F.3d 625 (7th Cir. 2008) ("a faithful and pragmatic adherence to the mandate of 18 U.S.C. § 3553(a) counsels that the nature and extent of any [Rule 35] reduction be determined in light of all the sentencing factors set forth in the statute."). To be clear, Miller's point isn't that a reduction is needed to avoid disparities. His point is that those cases reflect that just punishment—the government's only real argument for denying Miller's motion—can be achieved without a life sentence.

Evaluating what is just is more complicated than a strictly retributive approach to sentencing, especially in the context of compassionate release. Twenty years ago, the United States Conference of Catholic Bishops issued a report on what it viewed as some of the failings of our criminal justice system. One passage seems especially salient here:

> [A] Catholic approach does not give up on those who violate these laws. We believe that both victims and offenders are children of God. Despite their very different claims on society, their lives and dignity should be protected and respected. We seek justice, not vengeance. We believe punishment must have clear

10

*Federal Defender Services of Wisconsin, Inc.*

> purposes: protecting society and rehabilitating those who violate the law."³

The original sentence in this case was needed to achieve those purposes. And it has done so. For almost 25 years, society has been protected from Miller. In that time, he has rehabilitated. But it's no longer needed to do those things. It's now causing suffering and it's undermining Miller's human dignity. This matters because compassionate release grounded in a "fundamental belief, rooted in human dignity, that an inmate's altered and unfortunate circumstances may demand early release from incarceration." *United States v. Lewis*, 2020 WL 4583525, at *3 (M.D. Fla. Aug. 10, 2020) (internal citations omitted).

When the Court sentenced Miller, it intended that he would die in prison. That's implicit in a life sentence. But it didn't intend for him to suffer in prison. And it didn't intend for his life to be cut short because the prison was unable to protect him from a deadly virus. Given that Miller is no longer a danger to the public and has repented and rehabilitated, the current circumstances render compassionate release appropriate. For that reason, he asks the Court to grant his motion.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2020.

Respectfully submitted,

*/s/ Joshua D. Uller*
Joshua D. Uller, WI Bar #1055173

---

³ United States Conference of Catholic Bishops, *Responsibility, Rehabilitation, and Restoration: A Catholic Perspective on Crime and Criminal Justice* (Nov. 15, 2000), *available at*: https://www.usccb.org/resources/responsibility-rehabilitation-and-restoration-catholic-perspective-crime-and-criminal.

11

*Federal Defender Services of Wisconsin, Inc.*
Case 2:97-cr-00098-JPS   Filed 10/16/20   Page 11 of 12   Document 2235

Federal Defender Services
   of Wisconsin, Inc.
517 E. Wisconsin Avenue – Room 182
Milwaukee, WI 53202
Tel. (414) 221-9900
Email: joshua_uller@fd.org

*Counsel for Defendant, Randall Miller*