UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
Case No. 97-CR-98-13-JPS



RANDALL E. MILLER,
    Petitioner,

vs.

UNITED STATES OF AMERICA,
    Respondant.

MOTION FOR REDUCTION
IN SENTENCE PURSUANT TO
18 U.S.C. §3582(c)(1)(A)

---

Comes Now, Petitioner, Randall E. Miller, pro-se, hereby submitting this petition for Reduction of Sentence pursuant to 18 U.S.C. §3582(c)(1)(A) for Compassionate Release due to "Extraordinary and Compelling Reasons." Mr. Miller respectfully requests that this Honorable Court modify his sentence to time served with the original term of supervised release.

### STATEMENT OF FACTS

On June 15, 2000 a jury convicted petitioner of four federal criminal offence's: (Count 1) 18 U.S.C. §1962(c), (Count 2) 18 U.S.C. §1962(d), (Count 3) 21 U.S.C §841(a)(1) & §846, (Count 4) 21 U.S.C §841(a)(1) & §846 and 2. On October 12, 2000 this Court sentenced Mr. Miller to the terms as follows: LIFE w/out the possibility of parole on counts 1 & 2 and 240 months for counts 3 & 4 followed by 5 years of supervised release.

### ARGUMENT

#### THIS COURT HAS AUTHORITY TO REDUCE PETITIONER'S SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)

I. Jurisdiction

On December 21, 2018 former President Donald J. Trump signed the First

1.

Case 2:97-cr-00098-JPS   Filed 02/27/24   Page 1 of 10   Document 2366

Step Act of 2018 into law, see, First Step Act of 2018 Pub. L. No. 115-391 132 Stat. 5194. The Act, in part, amended 18 U.S.C. §3582(c) which gives the Court discretion, in certain circumstances, to reduce a defendants term of imprisonment based on "Extraordinary and Compelling Reasons" when the "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendants behalf" or after "the lapse of thirty (30) days from the receipt of such a request by the Warden of the facility, whichever is earlier." In this case the petitioner submitted his request to the Warden of FMC Rochester on December 3, 2023, the petitioner did not recieve a response until January 3, 2024 which is thirty-one (31) calendar after his initial request was submitted. Therefore, petitioner has satisfied the exhaustion requirement and now is petitioning this Court for compassionate Release.

## SENTENCE REDUCTION AUTHORITY PURSUANT TO 18 U.S.C. §3582(c)(1)(A)

This Court has the discretion to reduce the term of imprisonment imposed based on 18 U.S.C. §3582(c)(1)(A), which states in relevant part that the Court "may reduce the term of imprisonment, after considering factors set forth in 18 U.S.C. §3553(a) to the extent they are applicable if it finds that... "Extraordinary and Compelling Reasons" warrant such a reduction.. and that a reduction is consistant with applicable policy statements that have been issued by the United States Sentencing Commission. In 28 U.S.C. §994(t), congress had delegated to the Sentencing Commission the authority to describe what should be considered as "Extraordinary and Compelling Reasons" in U.S.S.G. §1B1.13.

2.

On November 1, 2023 the United States Sentencing Commission revised §1B1.13 to reflect that a defendant is now authorized to file a motion under 18 U.S.C. §3582(c)(1)(A), making §1B1.13 applicable to both defendant filed and Bureau of Prisons filed compassionate release motions. This amendment expands the list of "Extraordinary and Compelling Reasons" in five ways to better account for the plain language of section §3582(c)(1)(A) and it's legislative history. The five categories pertain to:

(1) Medical Circumstances
(2) Family Circumstances
(3) Victim Abuse
(4) Other Reasons
(5) Unusually Long Sentence

The commission's standard has parallels under the Bureau of Prisons program statement on compassionate release P.S. 5050.50, Compassionate Release/ Reduction in Sentence: Procedures for the Implementation of 18 U.S.C §3582 and §4205(g), **at 5 (January 17, 2019) (Providing Compassionate Release for inmates with debilitat**ed medical conditions). Under the First Step Act, the Bureau of Prisons program statement retains relevance only to the extent that if it's criterion are broader than the standards set forth by the commission in U.S.S.G. §1B1.13, comment n. 1(D)(recognizing that the BOP Director can designate additional "Extraordinary and Compelling Reasons" other than or in combination with reasons described in the commentary). However, under 18 U.S.C. §3582(c)(1)(A) it is the Court, not the BOP that is charged with considering the "Extraordinary and Compelling Reasons", then decide whether the sentencing factors set forth in §3553(a) warrant a sentence reduction.

3.

## III. MR. MILLER HAS ESTABLISHED EXTRAORDINARY AND COMPELLING REASONS THAT WARRANT SENTENCE REDUCTION

### A. Inadequate Health Care

Mr. Miller has suffered from numerous serious health issue's during his incarceration in the Bureau of Prisons. These health issue's include Sero-positive Rheumatoid Arthritis (RA), Coronary Artery Disease (CAD), Atrial Fibrillation, Hyperlipidemia, Congestive Heart Failure, and a Right Leg Amputation from complications from his RA. Mr. Miller is appealing to this Honorable Court because of these ongoing serious health issue's and the fact that with the re-emergence of Covid-19 and the Respiratory Syncytyal Virus (RSV) he is more at risk to contract either virus and have serious complications as he has expirienced already.

In February of 2022, Mr. Miller not only contracted Covid-19 he also had developed upper respiratory congestion which led to Covid-19 pneumonia. These conditions coupled with the fact that he was not able to take drugs that reduced Covid-19 symptoms caused his condition to deteriorate to the point that he was intubated and put on a ventilator to save his life. FMC Rochester is not immune from the Covid-19 virus and has cases of the virus inside the very unit where Mr. Miller resides in the past 90 days. The fact is that the Bureau of Prisons has not been forthcoming with the statistics concerning Covid-19 in it's facilities and therefore puts Mr. Miller at serious risk of death if he contracts either of these deadly virus's. The Bureau of Prisons no longer require or recommend Covid tests and operates on a "don't ask, don't tell" policy. All these factors coupled with Mr. Miller's health issue's are the ingredients for the perfect storm.

4.

Mr. Miiler does not make these claims based on the Covid-19 pandemic, for which according to the government has ended, but he is making these claims based on the <u>risk</u> to his health and his life if he is exposed to the deadly virus because of the negligence of the health care administration where he is being housed. The facility, FMC Rochester, specializes in complex mental and physical illnesses but Millers' illnesses are two-fold because he has a compromised immune system due to him having to take anti-rheumatologic drugs and to add to this problem he is in constant state of pain due to his RA and the pain management treatment he recieves not being sufficient. Each day he consumes four(4) different pain medications (Oxycodone 10 milligrams once a day, Morphine 30 milligrams, 2 times a day, Gabapentin 1200 milligrams, three times a day, and Lyrica 150 milligrams three times a day) and once a wek he takes 25 milligrams of methotrexate and still expiriences excrutiating pain. A

In combination to these present health issue's is the fact that he has entered the state of advanced age which is also a major factor dealing with his pain threshhold, Covid-19, and the inadequate health care offered by the facility he is presently housed. If Mr. Miller was at home he could see a RA specialist who would be able to prescribe him the proper medication that would allow him to at least live without the constant pain he does now and be under care that is not limited by prison policies.

Mr. Miller stays in fear of his heart condition getting worse than it already has and being without options for medical care because of the limited medications that are administered in the Bureau of Prisons. Mr. Miller is now in a electric wheelchair 24 hours a day and needs help with daily activities such as writing, picking up things, and preparing his food to eat. He maintains his personal activities even under these circumstances in order to keep some simblance of normalcy. This is no way to live each day.

5.

B. Rehabilitation

In the years since Mr. Miller was convicted and sentenced he has expirienced a transformation, not as most defendants which comes immediately due to being incarcerated away from home and family and usually not genuine. Mr. Miller has as many have explained it....evolved over time and has changed from the man he once was. The process began on his own merit and not on account of any promises or guarantee's. He has taken part in programs that the Bureau of Prisons offers such as the inmate Companion Program, Threshold Program, Fall watch, Suicide Companion Program, and has maintained employment in Medical Services. Mr. Miller has not only taken part in the activities he has just to help people out, he has done it to help himself realize the depth of what he has done in his younger years and to make an amends for those acts of violence with acts of compassion, empathy, and love of thy neighbor.

Mr. Miller has accepted responsibility for his crimes and has presented a letter to this Court with his thoughts and feelings concerning the people hehas hurt. That is the most important step he has taken, "accepted his responsibilty and realizing the hurt and trauma he has caused others." Miller has in no way done any of these things to impress the Court, he has done them in the pursuit of forgiveness from the victims, their families, his family, and God, he only seeks mercy and compassion from this Court.

C. Sentence Disparity

Miller next argues that his sentence presents a sentencing disparity that created a "extraordinary and compelling" reason to grant compassionate release based on his belief that his sentence, although not outside

6.

the guideline range for his crimes of conviction are above the national average for federal sentences for homicide (In 2016 the national average sentence for murder was 17.5 years and in 2019 the average sentence was 20 years.) There are also disparities with Millers' and that of his co-defendants. Randy Yager, a co-defendant who fled and lived in Mexico for 18 years before being apprehended by federal authorities displayed no respect for the law during his years before the indictment or after but yet and still recieved a 15 year sentence, well below the national average especially for a high ranking gang leader and far less than the sentence Mr. Miller recieved. Co-defendant James Schneider, who was convicted of the same crimes as Miller was sentenced to 540 months in prison and his sentence was eventually reduced for which he is no longer in Bureau of Prisons custody and lastly co-defendant Carl Warneke, who recieved a LIFE sentence after trial was released after serving a little more than 14 and a half years. All these defendants were convicted of the same offenses as Mr. Miller but were deemed worthy of a second chance to redeem themselves in society after serving far less than the national average sentence for murder.

The past 26 and a half years Miller has served reflects that his crimes were of a serious nature but these years since his conviction should not be so easily dismissed as insignificant because of the conduct that put him in prison, nor should it be the only consideration before this Court. When a Court determines whether to modify a sentence, the Court "considers the defendant on that day, not the date of his offense or the date of his conviction" (Not in any way attempting to downplay the seriousness of the offense of conviction). In this Courts denial to Mr. Yager for compassionate release, this Court was clear when it said that it had and the gover-

7.

nment had given substantial consideration to him in his claims of health issue's in his sentencing. Mr. Miller is asking for the same consideration in this reduction request.

The United States Supreme Court has described post-sentencing conduct as a "critical part of the history and characteristics of a defendant", which sheds light on the likelyhood that a defendant will engage in future criminal conduct. Such information may also bear directly on the Court's "overarching duty to impose a sentence sufficient, but not greater than necessary, to serve the purpose of sentencing.

The Seventh Circuit has held that a Court has braod discretion in determining what constitutes "extraordinary and compelling" reasons and the statute. 18 U.S.C. §3582(a), United States v. Gunn, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The Court must "consider the applicants individualized arguments and evidence", United States v. Rucker, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, the "movant bears the burden of establishing "extraordinary and compelling" reasons that warrant a sentence reduction. United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2022).

Mr. Miller believes that his age, serious health issue's, sentencing disparity, and his rehabilitation serve as good reason that may warrant this Court to reduce his sentence. In his reasoning from the United States Sentencing Commission he gleaned something he would like this Court to consider. The application notes state that "extraordinary and compelling reasons exist under <u>any</u> of the circumstances set forth in the statute, they do not state that "extraordinary and compelling" reasons exist <u>only</u> under those circumstances described, and other circuits have come to the conclussion that it all is in the district courts discretion and have granted similar situated sentence reductions based on that same logic.

8.

## D. Release Plan

If released, Mr. Miller plans to relocate to Texas with his older brother, Richard Miller, Jr. (73 years old), at his address at 1819 Plumbwood Way, Houston, Texas 77058. He will apply for government assistance to assist him with his health care and his brother and sister-in-law will assist him with getting to and from appointments for his health care.

Mr. Miller also plans to join a local church and take positive steps through the probation department to do outreach with at-risk children, he believes that his past choices should be able to deter some from making future mistakes that will harm them, their families, and the victims who they hurt for a very long time. That is something that he has been trying to do from his present situation (see letter attached).

These plans will allow Mr. Miller to transition to society and live whatever life he has left in a way that will show his true character.

## CONCLUSSION

For the following reasons, Mr. Miller respectfully requests that this Honorable Court grant compassionate release and reduce his sentence to time served with an extended term of supervised release with conditions.

Respectfully Submitted,

Randall Miller
Reg. No. 05019-089
FMC Rochester
P.O. Box 4000
Rochester, MN 55903



02 / 12 / 2024

9.

CERTIFICATE OF SERVICE

I Randall Miller, do hereby certify under the penalty of perjury of the laws of the United States of America that the following motion for COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C §3582 (c) has been filed and served by placing the same in the institutional Legal/Special Mail system First Class postage prepaid, and addressed to:

U.S District Court
Attn: Clerk of the Court
517 E. Wisconsin Ave
Milwaukee, WI 53202

*Randall Miller* (signature)
Randall Miller

Date: 2-12-24

HANNAH L LOWERY
NOTARY PUBLIC
MINNESOTA
My Commission Expires January 31, 2027

*Hann Cpt* (signature)
02 / 12 / 2024